[Civ. No. 13549. First Dist., Div. Two. May 28, 1948.]

GEORGIA M. FOSTER, Respondent, v. A. P. JACOBS & ASSOCIATES et al., Appellants.

748

Hadsell, Sweet & Ingalls for Appellants.

John J. Taheny for Respondent.

FINLEY, J. pro tem.—This is an appeal by defendants from a judgment for personal injuries entered upon a verdict for plaintiff in the sum of $7,500. The injuries were sustained when plaintiff fell on the newly waxed linoleum floor of a hallway on the premises where she was employed.

At the time of her injury plaintiff was a posting clerk in the offices of the California Insurance Commissioner, a tenant of defendants. The offices occupied all of the seventh floor of the building numbered 333 Kearny Street, which building was owned by defendants Jacobs. Defendant Anthony Rivera was employed by said owners as a janitor and maintenance man for the building.

The seventh floor of this building was laid out as a straight hallway or corridor extending from north to south with rooms on both sides. According to the diagram admitted into evidence there were five doors opening into this corridor from the east and six from the west. At the north end was a lavatory, at the south a door which led into an elevator vestibule. Immediately opposite this door and across the vestibule was the elevator. Opening into the vestibule on the left was a door leading to a stairway. On the east was a door numbered 700 through which employees of the Insurance Commissioner entered and left the offices.

Numbers of the rooms opening into the corridor proper have no particular significance with the exception of two which opened into it from the east side. From south to north these were numbered 704 and 706. Between them in the corridor stood a row of some 20 filing cabinets which according to the

diagram extended approximately from the north casing on door 704 to the south casing on 706. The floors in the corridor and elevator vestibule were covered with linoleum.

Plaintiff sustained the injury upon which this suit was brought during the afternoon of Monday, May 29, 1944. The previous day, Sunday, May 28th, defendant Rivera washed, shellacked and waxed the linoleum covering the floors of the vestibule and the hallway. On her return to work the following morning, Monday, May 29th, plaintiff noticed that the floor in the vestibule had been waxed and was ''very slippery and glaring.'' She walked off the elevator, through the vestibule into room 700 and from there into 704-706, ''the main room.'' During the morning she had occasion to go out to the files in the corridor three or four times. She went out through door 706, and to quote plaintiff's testimony ''turned down to the files, looking for certain papers, knowing it was slippery underfoot and glarey and I took the precaution of holding on to the handles of the four door files.'' She observed that the floor had been waxed. On these occasions she did not slip.

On her way out to lunch at noon plaintiff slipped on the floor in the vestibule by the elevator but did not fall. Following is an excerpt from plaintiff's deposition read into the record:

''Q. Did you experience any difficulty in walking on it before your accident in any way?

''A. Well, I walked very carefully. I had to use the corridor, and I walked very carefully.

''Q. Well, I mean did you slip before the accident in question in any way?

''A. When I was going out to lunch, I noticed it then particularly, for my foot kind of went out from under me; and I half-way braced myself; and I said to myself, 'This is dangerous,' in my own mind.''

After this incident plaintiff went back into the offices and spoke to her office manager who in turn reported the slippery condition to defendant Rivera.

Another excerpt from the record of plaintiff's testimony on cross-examination is as follows:

''Q. Did the outer lobby appear to be more heavily waxed than the interior corridor? A. No, it did not.

''Q. What would you say as to that? Did it appear to be or not, or about the same? A. Yes, waxed at the same time— one fell swoop, I would say; he opened the door and went

right through to the end of the corridor. That would be in my opinion.

"Q. What was the appearance of the wax that morning when you came to work? Outside of glaring, did it appear to have any excessive amount of waxing on the floor? A. That I am unable to say; to me it was very uncomfortable to walk on.

"Q. But you didn't take any particular notice of that? A. I didn't take any particular notice of it being worse in one spot than the other. It was all about the same.

"Q. As far as you could see, it all appeared to be about the same? A. Yes, it appeared about the same.

"Q. And you say it was all bad? A. To my mind."

Plaintiff returned from her lunch and there was no further incident until sometime later in the afternoon when she sought to cross the corridor to room 703 which was directly across from 704. As she stepped out through door 704 with her left foot she slipped on the linoleum, her left foot skidding forward which caused her to fall back striking her shoulder on the door jamb or casing which resulted in a fracture of her left arm and shoulder.

Beyond any question of doubt defendants by treating the linoleum floor in the vestibule and corridor by whatever method was used created a floor surface that was slippery. Defendants admit that it was slippery but contend that the linoleum was treated with a standard liquid wax applied according to the usual custom of defendant Rivera and that defendants were not negligent in its application. Defendants do not concede that the slippery condition constituted a dangerous condition to those using the waxed floorways but it is a matter of common knowledge that a slippery floor presents a more than ordinary risk to those walking upon it. It makes little difference whether this increase in risk factor be termed dangerous or merely less safe than the ordinary. If a landlord creates a condition on his premises which is less safe than before and where the hazards are not open and obvious in all particulars a duty is owed to tenants or invitees who were familiar with the former condition to apprise them of this increase in risk factor. It would undoubtedly constitute negligence not to do so and unless it should appear that a tenant or invitee who was injured by reason of this change in condition had full knowledge of all the additional hazards resulting from the change or unless the hazard proximately causing the injury was so open and obvious that it could not

in all reason have remained unnoticed, the landlord would be liable.

Defendants' position on this point appears from the following statement in their opening brief: "But it must be remembered that plaintiff is not entitled to recover even if Rivera had been negligent. Plaintiff complains because she fell on the slippery floor. The uncontradicted testimony shows that she knew that that floor was slippery at the time and place she entered upon it; that knowing this, she failed to take the precautions that she had previously taken to avoid falling on this floor that she thought dangerous. She knew that the floor was slippery and that it was possible that it would cause her to fall. Her knowledge of this condition was greater, not less, than defendants.''

In this connection defendants rely primarily on *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 P. 76]. In that case plaintiff a private nurse employed by a patient in defendant Sutter Hospital slipped and fell on the waxed linoleum floor of the patient's room. She had worked one shift the day previous to her injury. She testified that on this first day the floor was slick and she could not keep her feet. She told the head nurse that the floor was slippery. The floor was equally as bad when she came to work at 7 o'clock the following morning, if not worse. It was highly polished and she could not keep her feet it was so slick. She told the head nurse that she (plaintiff), would slip and fall. At 9 o'clock she did slip and fall while walking past her patient's bed and in the fall was injured. She had judgment in the trial court which was reversed in the District Court of Appeal. The case was taken over by the Supreme Court for the purpose, as stated in the opinion, "to permit of further consideration of plaintiff's status, i. e., whether she should be adjudged an invitee or an employee of the defendant.'' The holding was that she was an invitee.

Since plaintiff in that case was held to be an invitee of the hospital so in this case plaintiff must be considered as an invitee of defendants. The nurse was an employee of the patient who was a tenant of the hospital. Plaintiff here was an employee of the Insurance Commissioner, who was the tenant of defendants. The same rules of law then must apply in both cases unless there has been subsequent modification of the rule in the Mautino case. On the facts they are certainly quite similar.

On the point of assumption of risk and contributory negligence the opinion in the Mautino case at pages 560-561 reads as follows:

"The court properly instructed the jury, at the plaintiff's request, that at the time of the accident she was 'an invitee of the defendant'. It is clear from the plaintiff's testimony that she had full knowledge of the condition of the floor during all the afternoon of September 28th and for two hours in the forenoon of the next day. It does not appear that the defendant's knowledge thereof was superior to that of the plaintiff. If it was negligence for the defendant to maintain the floor in the condition described by the plaintiff, there appears to be no escape from the conclusion that it was negligence for the plaintiff, with full knowledge of such condition, to continue in the use thereof.

" 'The authorities are entirely agreed upon the proposition that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go thereon or therein owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils. In the language of a recent opinion: "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them." . . . The owner is not an insurer of such persons, even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not to the person injured that a recovery is permitted . . . There is no liability for injuries from the dangers that are obvious, or as well known to the person injured as to the owner or occupant.' (20 R.C.L., pp. 55-57; *Goldstein* v. *Healy,* 187 Cal. 206, 211 [201 P. 462]; *Shanley* v. *American Olive Co.,* 185 Cal. 552, 555 [197 P. 793].) "

Factually the only essential difference between the Mautino case and the one at bar is that here plaintiff had been employed on and used the same premises over a period of several

years. It was her regular employment. There was no evidence that floors of the vestibule or corridor had ever been waxed to this slippery condition at any time within plaintiff's previous experience. There was evidence that the floors had been waxed on previous occasions but on those occasions were never noticeably slippery. Prior to the time she left work on Saturday she had been able to and had used the vestibule and corridor in safety. When she returned Monday morning she found the vestibule and corridor, parts of the premises she had of necessity to use in course of entering and leaving the building and in working with the files, in an admittedly newly waxed and slippery condition. She had two alternatives; she could have refused to perform any duty or function involving use of the corridor until something was done to remedy this condition or she could have exercised what care she could for her own safety and continued with her duties. She chose the latter.

In the Mautino case plaintiff found the floor in a slippery condition when she first entered upon her duties. She was a special nurse, the employment would commonly be only temporary. She had a choice of assuming the risk along with the employment or in refusing the employment until the slippery condition was remedied. It was not a question of continuing the duties which had been previously assumed and carried on for several years on a nonslippery floor over to one that had been made slippery by those having exclusive control of changing the condition of the premises.

It would seem that there is at least some difference between these two cases on this ground. Certainly defendants could not be denied the right to properly wax their floors in either case. In the Mautino case plaintiff was an invitee of the hospital only in the event that she chose to accept the conditions there as she found them. It was not a question of accepting an invitation under one set of conditions and then after such acceptance and the entering upon employment having these conditions changed over a week-end to others involving an increase in hazard to safety.

In the case at bar we have an example of this latter situation. Plaintiff having been upon the premises as an invitee for several years it was the duty of the owner not only to maintain the premises in a reasonably safe condition but to refrain from creating an unsafe condition by active negligence. Plaintiff had every right to continue on with her work even

though she observed a change in the condition and realized that it involved *some* additional risk if as a reasonable person she concluded that this could be done through the exercise of additional precautions. She could not in reason be expected to either quit her job or waive all recourse for using a floor that her duties of long standing required her to use just because her employer's landlord chose not to exercise ordinary care in maintaining the floor or chose, in the course of such maintenance, to apply wax in such manner as to make the floor slippery and dangerous when common experience and the testimony of an expert witness called on behalf of defendant established beyond all doubt that a standard linoleum wax properly applied does not create a dangerously slippery floor. It is quite true that plaintiff observed that the floor was slippery, and testified that she thought it was dangerous. She even slipped upon it in the vestibule on her way out to lunch. It is also true however, and is a matter of common knowledge that reasonably slippery surfaces can be walked upon with comparative safety when the slippery condition is uniform, is recognized and suitable care in the light of the condition is exercised. Plaintiff here testified that the corridor had been polished on previous occasions. On these occasions she observed that it had been waxed but it was never slippery. She had worked there from August 1937 to October 1944. The same covering was on the floor during that entire period, but the only time she found it slippery was the day of the accident.

Plaintiff also testified regarding her care and conduct while using the hallway on this particular occasion and the only proper inference to be drawn from the verdict for plaintiff is that the jury found such care and conduct reasonable under the circumstances. We cannot say that the evidence is insufficient to sustain this finding and that as a matter of law merely because plaintiff recognized a slippery condition of the floor which she felt to be dangerous and proceeded nevertheless to use the floor exercising the care and caution to which she testified, that she was contributorily negligent in so doing. ''Previous knowledge of the defective condition is not, of itself, conclusive evidence that a plaintiff failed to exercise due care.'' (*Harris* v. *Joffe*, 28 Cal.2d 418, 425 [170 P.2d 454.] See also *Hughes* v. *Quackenbush*, 1 Cal.App.2d 349, 356 [37 P.2d 99]; *Finch* v. *Willmott*, 107 Cal.App. 662, 667 [290 P. 660].) ''Certainly it may not be said that a reasonable person could draw from this evidence only an

inference pointing unerringly to the negligence of [plaintiff] . . . proximately contributing to her injury (see *Flores* v. *Fitzgerald*, 204 Cal. 374, 376 [268 P. 369] and a reviewing court is not authorized to substitute its deductions for those of the trial court.'' (*Harris* v. *Joffe, supra.*)

In *Sommerfield* v. *Miratti*, 49 Cal.App.2d 450 [121 P.2d 746], the plaintiff slipped and fell in a hotel on a waxed stairway of composition tile. The whole surface was waxed and a new application of wax was made once a week. This was done by an employee of the hotel. Plaintiff was familiar with the hotel and had used the steps many times during a period of four or five years before the date of the accident. She had observed the condition of the steps on these occasions and testified that she knew the steps were slippery. At page 455 the court after reciting these facts states as follows: ''Possibly the evidence would have supported contrary findings on some or all of these matters, but we cannot interfere with the jury's conclusions, based as they are, on sufficient evidence. The mere fact that there is some danger of falling in using a passageway provided for the use of an invitee does not in every case convict him of contributory negligence for using it with knowledge of the condition. The question is whether he used ordinary care in so doing, and if to a man of ordinary prudence it would appear that in spite of the danger he can by taking available precautions safely use the passageway, he is not negligent in using it with those precautions.'' (Citing *Christy* v. *Ulrich*, 113 Cal.App. 338, 342 [298 P. 135]; *Roseberry* v. *Edward F. Niehaus & Co.*, 166 Cal. 481 [137 P. 232]; *Tuttle* v. *Crawford*, 8 Cal.2d 126 [63 P.2d 1128].)

In *Mautino* v. *Sutter Hospital Assn., supra,* the court states at pages 560-1, ''The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property . . . There is no liability for injuries from the dangers that are obvious, or as well known to the person injured as to the owner or occupant' . . .'' ''It is clear from plaintiff's testimony that she had *full knowledge* of the condition of the floor . . . It does not appear that defendant's knowledge thereof was *superior* to that of the plaintiff.'' (Emphasis added.)

In the case at bar there was testimony that the floor in the hallway was not of uniform slipperiness throughout; that this was unknown to plaintiff but could by proper inspection

have been ascertained by defendants. Defendant Rivera testified that he applied the wax with a brush by first dipping it into the liquid wax and then brushing it on the floor or by pouring the wax on the floor and then spreading it with the brush. He stated that the brush "was always pretty wet." He also testified that he did nothing further to the floor after applying the wax with the brush; that his employers, the defendants Jacobs, had provided him with an electric machine for scrubbing, polishing etc., but that after applying the wax on this occasion he did not use the machine on this floor until after he had been informed of plaintiff's injury.

Further testimony of defendant Rivera was that after application of the wax he made no inspection or test of the floor to determine its condition. He stated: "I knew was proper to distribute the wax, because that wasn't my first experience, I had done it before."

"Q. You knew if it was not properly distributed it would be slippery? A. Yes sir, I did."

At another point:

"Q. And you knew that persons are liable to fall on it if they walk on it before it hardens? A. Yes sir.

"Q. You also knew that if put on too thick at any spot it takes a long time to harden? A. Yes sir."

Nevertheless defendants made no inspection of the floor on Monday morning following the waxing to determine its condition. He admitted that plaintiff's office manager informed him of the slippery condition of the floor sometime before noon but that he did nothing about it until after plaintiff was injured which was shortly after 1 p. m.

Plaintiff testified that the wax at the point in the hallway where she slipped was still damp; that a mark was left on the floor where her foot slipped and that subsequent examination of the sole of the shoe involved in the slipping disclosed a deposit of wax on the edge of the sole. An expert witness called by defendant testified that he would not put wax on so thick that on the following day a person's foot would make a streak on it; that the method he used was to dip a mop in the wax, wring it out and then apply the mop to the floor.

█ In view of this testimony we cannot say that the implied finding of negligence by the jury is not amply supported by evidence. Furthermore it indicates why plaintiff may well not have had full knowledge of the true condition of the floor. A finding that the wax was not uniformly thick or dry and thus not of uniform slipperiness would find ample

justification in defendant Rivera's own testimony. There is no showing that such a condition would have been discernable by mere visual observation, particularly to one with no special knowledge of or experience with the waxing of floors and there is not even a hint that plaintiff had any such knowledge or experience.

Defendants on the other hand had actual knowledge of a slippery condition of the floor an hour or more before the accident happened. In addition to that they as the only persons having control over the floors and premises were charged with knowledge of their condition and certainly where by positive action they wrought a change in conditions, any knowledge that an inspection would have disclosed must be imputed to them whether they made the inspection or not. Defendants applied the wax, knew the manner in which it was applied and according to defendant Rivera's testimony knew that if put on thick either uniformly or in spots it would take longer to harden where it was the thickest and that persons were liable to fall if they walked on it before it did harden. The testimony was sufficient to sustain a finding that the wax was thicker at some spots than at others and had not hardened at the spot where plaintiff slipped which was a condition of which plaintiff cannot be charged with knowledge superior to that of defendants.

The remaining points raised by defendants are that the court gave two erroneous and harmful instructions and ruled erroneously and harmfully on matters of evidence. We shall consider the latter first.

It would serve no useful purpose and would be impractical for us to discuss here each particular ruling on the evidence referred to by appellants. The two principal considerations urged are that the form and substance of some of the questions put to defendant Rivera were improper because of his alleged limited use of the English language and because some of them dealt with the condition of the floor and measures taken by Rivera in connection with it after plaintiff's injury.

An examination of the transcript covering Rivera's testimony indicates that contrary to appellants' contention Rivera handled and seemed to understand the English language quite well. That he was not an illiterate person can best be illustrated by quoting three of his longer answers picked at random from the transcript. In answer to questions put to him he replied as follows:

"A. I knew was proper to distribute the wax, because that wasn't my first experience, I had done it before."

"A. Answering this question, we used it, Your Honor, not only for taking off excess wax from the floors but use it for scrubbing the floors; we use that machine for waxing floors, for sanding floors, all of the purposes used that machine for."

"A. I didn't use the machine to polish floors or anything like that, but this machine, I give consideration to the useful a person can gain by using it polishing floors, but I never did use it to polish my floors; it isn't necessary."

This is not the language of an illiterate person.

■ Referring to evidence that had been admitted relative to Rivera's treatment of the floor after the accident the court admonished the jury in part as follows:

": . . you are instructed to disregard and leave out of consideration altogether from now on the evidence that has been allowed with reference to the use of that machine referred to by the witness Rivera and to the witness' activities in leveling off the floor and attempting to make it smooth and even."

There followed a discussion between court and counsel relative to the court's reference to the condition of the floor whereupon the court further instructed as follows: ". . . the determination of the facts in the case is entirely within your province, and I have not attempted to intimate any views that I may have in regard to the condition of this floor, as to whether it was rough and uneven at the time of the accident, or what its condition was. That problem is for you to wrestle with after the testimony is all in and for you to adjudicate by your verdict. Is that satisfactory Mr. Sweet?"

"Mr. Sweet. (Counsel for Appellant). I think that is very complete, your Honor."

Viewing the situation with relation to the substance of the particular testimony given, the court's rulings and this admonition we do not consider that appellants' position was prejudiced.

The two instructions objected to by appellant read as follows:

". . . If you find that defendant Anthony Rivera, while acting on behalf of the owners of the property in question negligently caused the floor in question to become dangerous for use by the plaintiff, Mrs. Foster, then, if you so find, the plaintiff, Mrs. Foster, is not required to prove that he, Anthony Rivera, or the other defendants, had notice or knowledge

of such dangerous conditions, if you find that it was dangerous . . .''

''The owners of a building who, directly, or by implication, invite others to enter therein, and that includes plaintiff in this case, owe to such persons who thus enter a duty to have their premises in a reasonably safe condition, and to give warning of latent or concealed perils and dangers.''

[ ] The first of these instructions merely advised the jury that if defendants' *activity created* a dangerous condition it was unnecessary for plaintiff to prove that defendants had knowledge of it. There is no question here of a concealed or hidden defect. Furthermore it was admitted by defendant Rivera that he was advised of the slippery condition of the floor an hour or more before the accident happened. It was not necessary that he should have been advised in minute detail of the actual condition of the floor for he created the condition. He was experienced in treating floors with wax. Assuming for the moment that due care would not have required an inspection before tenants and invitees were allowed upon the floor, certainly the exercise of due care did require one after Rivera had been warned. Therefore knowledge amounting to actual knowledge of the condition having been admitted by Rivera it was in any event unnecessary for plaintiff to prove it and the instruction is therefore harmless.

[ ] In connection with the second instruction above appellants refer to the rule discussed in *Ellis* v. *McNeese,* 109 Cal. App. 667 [293 P. 854]. That rule has no application here for this was not a condition created by an agency over which defendants had no control or direction, such as the elements or some outside person. Here they themselves actively created the condition. Rivera was experienced with wax and floors by his own admission. To him an inspection would have revealed the true condition of the floor. To an experienced person its true condition would have been apparent and not latent or concealed.

The judgment is affirmed.

Nourse, P. J, and Dooling, J., concurred.