[Civ. No. 6856. Fourth Dist. Apr. 18, 1962.]

JOSEPH P. LATTANZI, a Minor, etc., Plaintiff and Appellant, v. SAN MORITZ CLUB et al., Defendants and Respondents.

Otis Babcock and Roy S. Giordano for Plaintiff and Appellant.

Chase, Rotchford, Downen & Drukker, Henry J. Bogust and William G. Tucker for Defendants and Respondents.

GRIFFIN, P. J.—This is an appeal by a minor plaintiff and appellant, Joseph P. Lattanzi, by his guardian *ad litem,* from a judgment in favor of defendants and respondents San Moritz Club, a corporation, and Blake Woodcox, entered by the trial court after a trial without a jury.

The evidence discloses that the plaintiff was injured on November 26, 1958, a week before his 18th birthday, at an ice-skating rink on the premises owned and operated by the San Moritz Club. Plaintiff's foot was cut when it came in contact with a part of an ice-shaving machine owned by the defendant Club. The part of the machine involved was a rotating scraper, variously referred to as a "rotating cylinder," "rotating drum," or "roller." Apparently, this roller was about three feet in length and four inches in diameter, located somewhat like the brush in an upright vacuum cleaner, and the roller had teeth in it about one-half inch long which came in contact with the ice when it was in operation and shaved or scraped the top of the ice over which the machine traversed. These blades served the dual function of shaving the ice and pulling the machine in a forward motion over the ice. The machine contained a device whereby the roller could be lifted approximately two to two and one-half inches off of the ice when the machine was not in operation. When the roller is in this "idling position," it continues to rotate if the machine is not turned off. When in use, the protective guard or device is about one-half inch from the ice.

Defendant Woodcox was the manager of the skating rink at the time plaintiff was injured and he operated the machine in plaintiff's view for some length of time before the accident. The evidence is in conflict as to whether the plaintiff rode on it for 20 minutes to a half hour immediately before the acci-

dent as he claimed. Woodcox testified that he did not remember his being on it but he did observe him, for the first time, coming across the ice without skates in a sliding walk, with his shoes on, and that he slid his foot under the machine. Woodcox testified that he previously had warned plaintiff not to come onto the ice with shoes and no skates, and he repeated the warning when he saw him taking off his skates just before the accident. Plaintiff testified that as he approached the machine, he was aware that it was lifted off of the ice and that he "guessed" that it was about two or three inches in the air; that a gasoline motor operated it and it was making quite a noise, but he said he wasn't paying any attention to the machine, and knew the ice was slippery. The evidence shows that plaintiff observed the machine cut into the ice and through ice while it was in operation and that he knew the principle of its operation; that during this period the machine had been raised into the idling position two or three times. Plaintiff testified that he was riding on the machine to weight it down and that it had been placed in idling position by Woodcox; that he went over to the bench some 15 feet away to obtain a cushion and that he came back toward the machine and started an intentional "sliding motion" toward Woodcox and while still in this "sliding motion," his foot came in contact with the rotating cylinder while the machine was in idling position. Plaintiff was wearing street shoes at the time. Plaintiff's purpose in coming to the skating rink was to skate and later to perform certain services for which he would be given the privilege of skating. He testified that he did not know that there was no complete guard around the roller when it was in the idling position, but he admitted that he knew that the blade was raised about three inches off the ice and continued turning in this position. He admitted that when he approached the machine he knew the ice was slippery and that there were chips of ice, snow and ice residue in the area, but he said he wasn't thinking about the machine as he came back to it. He suffered considerable injury to his foot by the rotating drum. The record shows that immediately after the accident defendant placed plaintiff's name on the payroll so that he could obtain proper medical care.

After trial, the court found generally in favor of defendants and against plaintiff and found plaintiff was an invitee upon the premises and that neither defendant was negligent in any manner; that the condition of said ice machine and said premises was open and *obvious* to all persons, including

plaintiff; that no finding on the question of contributory negligence or assumption of risk was made in view of the fact that no negligence of defendants was shown. Other named defendants were dismissed from the action. Judgment was entered accordingly.

On this appeal, plaintiff claims: (1) insufficiency of the evidence to support the judgment; (2) the evidence shows conclusively that the mechanism in question was dangerous and that there was a duty to warn the plaintiff of the danger and that no warning was given; (3) the evidence also shows conclusively that there was a violation of safety orders and accordingly there was negligence on the part of defendants; and (4) the findings are fatally defective in failing to find on the question of a violation of the safety orders or regulations.

### SUFFICIENCY OF EVIDENCE AND DUTY TO WARN

The main, if not the sole, argument in this respect is that there was a dangerous condition of the machine and since plaintiff was an invitee he was entitled to a warning of such dangerous condition. It is true that a landowner owes a duty to an invitee of warning of an existing dangerous condition, but there is no such duty where the dangerous condition is so obvious that the invitee could reasonably be expected to see it. (*Mula* v. *Meyer*, 132 Cal.App.2d 279 [282 P.2d 107].) The trial court's memorandum opinion recognized this proposition and said:

"The ice shaving machine in the instant case is one whose dangerous aspects are obvious. It was operated by a gasoline motor with such power and force as to shave the ice and to throw it aside, when the machine was in operation. It appears from the photograph of it in evidence that it consists, among other things, of a chain drive, which obviously is noisy, and the plaintiff testified that he had watched it for a period of at least an hour prior to the accident. It would seem that the danger thus involved is an obvious one and one of which the defendant has no duty to warn. In fact, it is difficult to conceive of what the defendant's agents might say which would be any more impressive warning than the machine itself in operation."

This was a factual question for the trial court. The evidence totally supports the findings and judgment. (*Philips* v. *Sun-Best Fruit Distributors*, 160 Cal.App.2d 70 [324 P.2d 948]; *Pauly* v. *King*, 44 Cal.2d 649 [284 P.2d 487].)

## INDUSTRIAL SAFETY REGULATIONS

 At the close of plaintiff's case, he offered in evidence certain industrial safety regulations in reference to providing guard and guard rails for certain equipment, i.e. sections 3501, 3504 and 3510, safety orders of Division of Industrial Safety. Section 3501, subdivision (d) defines flywheel or balance wheel as: ". . . a heavy wheel which by its inertia assists in securing uniform motion of machinery by resisting sudden changes of speed."

Section 3501, subdivision (d) defines guarded as: ". . . shielded . . . so as to remove liability of accidental contact . . ."

Section 3501, subdivision (g) defines machine as: ". . . the driven units of the equipment as distinguished from the driving unit . . ."

Section 3501, subdivision (h) defines parts, as used in these orders, as: ". . . all moving parts of the machine except those forming part of the point of operation."

Section 3501, subdivision (j) defines point of operation as: ". . . that part of a machine which performs an operation upon the stock or material."

Under section 3510, subdivision (b), a machine flywheel is defined as: ". . . having spokes or projections . . ."

Plaintiff argues that the cylinder, three feet long and four inches in diameter, is, under the definition, a machine flywheel and should have been equipped with an additional guard so that when the machine was in a raised position the space of 2 to 2½ inches between the present guard and the ice could protect a person against just such an accident as happened here.

It is defendants' position that this was not a flywheel within the meaning of these sections and the trial court was justified in rejecting plaintiff's claim.

Plaintiff insists that these sections were applicable and accordingly defendants were in violation of law in this respect and that defendants were guilty of negligence, as a matter of law, and that the court erred in finding no negligence on the part of defendants. (Citing *Hyde* v. *Russell & Russell, Inc.,* 176 Cal.App.2d 578 [1 Cal.Rptr. 631]; *Di Muro* v. *Masterson Trusafe Steel Scaffold Co.,* 193 Cal.App.2d 784 [14 Cal.Rptr. 551]; *Hopper* v. *Bulaich,* 27 Cal.2d 431 [164 P.2d 483]; *Armenta* v. *Churchill,* 42 Cal.2d 448 [267 P.2d 303].)

Plaintiff therefore demands that the judgment be reversed and that a new trial be ordered only on the question of damages. Of course this suggestion would be ill-timed, because

the question of proximate cause and claim of contributory negligence would still be an issue in the case.

It appears from the record that the court did take judicial notice of these regulations and did receive them in evidence, over objections, and did consider them in connection with the alleged negligence of defendants. Whether the cylinder described constituted a flywheel within the definition of that term as illustrated in a diagram explaining the meaning of that term by the Division of Industrial Safety, as indicated by an exhibit in evidence and should have been guarded, is problematical. At least, it appears to be a factual question for the trial court to determine and not one of law. The trial judge, in his memorandum opinion, stated: ''But the machine in question was so designed that, when it was in operation, it had all the necessary and proper guards required by the safety orders. It was only when the machine was idling that it was raised to a point where the guard was not effective. I am of the opinion that the safety orders were not violated.''

### FINDINGS

Plaintiff complains because the trial court failed to make a specific finding on the question whether or not these sections were violated. The complaint does not allege a violation of these sections as grounds for negligence. The pretrial order does not mention them. The memorandum opinion definitely shows that the court considered them and, after reviewing all the evidence, including these regulations, it found generally against the plaintiff and specifically found that neither defendant was negligent ''in any manner, particularly or at all'' and ''operated and maintained . . . the said ice machine without negligence.'' Plaintiff did not object to these findings and proposed no specific express finding on that issue.

It is axiomatic that the appellate courts continually uphold judgments in spite of a failure to find specifically on a material issue where there are other more general findings from which the omitted finding follows by necessary implication. (*New* v. *New*, 148 Cal.App.2d 372, 388 [306 P.2d 987]; *County of El Dorado* v. *Al Tahoe Investment Co.*, 175 Cal. App.2d 407, 413 [346 P.2d 205]; *Pry Corp. of America* v. *Leach*, 177 Cal.App.2d 632, 636 [2 Cal.Rptr. 425]; *Elliot* v. *Jensen*, 187 Cal.App.2d 389, 393 [9 Cal.Rptr. 642].) It is also the rule that where a proper finding is made upon an issue, it is not necessary to negate issues contradictory thereto, since the finding on the first issue is an implied negation of all

contrary propositions. (*Kux* v. *Cal-West Lumber Corp.*, 162 Cal.App.2d 500, 505 [328 P.2d 240]; 2 Witkin, California Procedure, sec. 118, p. 1850. ▉ There was a sufficient finding on the subject.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 8, 1962, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1962.