[Civ. No. 20053.   First Dist., Div. One.   July 23, 1963.]

NORMAN KENNETH LARSON, Plaintiff and Appellant, v. SANTA CLARA VALLEY WATER CONSERVATION DISTRICT, Defendant and Respondent.

Boccardo, Blum, Lull, Niland & Teerlink, Norman W. Saucedo, Edward J. Niland, and William G. Kinder for Plaintiff and Appellant.

Spencer M. Williams, County Counsel, Joan A. Symon and Robert P. McNamee, Deputy Counsel, for Defendant and Respondent.

BRAY, P. J.—Plaintiff appeals from judgment of nonsuit.

QUESTIONS PRESENTED
1. Was plaintiff required to file a claim?
2. Was there evidence of defendant's negligence?
3. Was there evidence of nuisance?

RECORD

Plaintiff sued defendant district for damages for injuries received by him when, on July 10, 1958, in water skiing at Calero Reservoir, he lost his balance, fell into the water head first and struck his head on the bottom of the reservoir. The reservoir is one of a number owned by defendant. The trial court granted defendant's motion for nonsuit on the grounds that the evidence showed no negligence or nuisance.

FACTS

On April 7, 1958, defendant leased the reservoir to the County of Santa Clara for a recreational facility. Para-

graph 2 of the lease provides "Lessee shall have the full control and authority over the use of the above described lands and water surface leased to Lessee for recreational purposes and Lessee may control, regulate and supervise the public use thereof. However, it is expressly understood that Lessor is engaged in the conservation of water and that neither this agreement nor any of the terms or conditions thereof shall in any way interfere with the absolute, free and unrestricted right of Lessor to operate and maintain said dam and reservoir or any appurtenant works thereto, or to repair or reconstruct any of its works, or to raise or lower the height of the water of said reservoir . . ." The district had a topographical map of the dam area, showing the elevation of the ground surface throughout the area. There are various elevations throughout the lake bed, but to the observer the surface of the lake appears to be one deep body of water. No map of the lake bed was given the county.

The county took over the recreational activity. It passed an ordinance affecting water activities, and rangers were on duty at the reservoir. Defendant did not work in liaison with the county with reference to the operation of the reservoir as a recreational activity. Defendant continued its conservation activities. Release of water from the reservoir during summer months was for the purpose of allowing it to percolate into the underground gravel strata so as to build up an underground water level in the Santa Clara Valley. Between May 1, 1958, when the reservoir was at full capacity, and the date of the accident, the reservoir's water level had been reduced approximately 7 feet.

Plaintiff started water skiing at Calero Reservoir about a month before the accident, and had skied there some three or four times. In that period the water was reduced approximately 5 feet. He had skied there the week end before the accident. On the day of the accident the water level was approximately 1 foot lower than when plaintiff was last there. His fall was at a point approximately 70 to 90 feet off shore. He testified that the water was approximately belt high. (Plaintiff is 6 feet 5 inches tall.) He told a doctor immediately after the accident that the water was about 5 feet deep. Taking the testimony most favorable to plaintiff, the water at the point of the fall was probably about 3 feet deep and murky, so that its shallowness was not apparent.

The district's watermaster maintained a daily record of

the water level in the lake, indicating the elevation above sea level, but did not check the height of the water in the shallow areas. The chief engineer of the district testified that he knew that the lake was being used for water skiing.

1. No Claim Required.

█ Defendant district is established under the provisions of the Water Conservation Act of 1931 (Stats. 1931, ch. 1020). Defendant is not subject to the provisions of the Public Liability Act. (Gov. Code, § 53051; *Kambish* v. *Santa Clara Valley Water Conservation Dist.* (1960) 185 Cal.App.2d 107, 111-112 [8 Cal.Rptr. 215].) Thus the claim procedures under that act do not apply. █ At the time of the accident the Water Conservation Act of 1931 contained no provision requiring the filing of claims as a condition to the bringing of an action in the courts. The act merely contained a general section providing that claims shall not be paid until properly authorized. (Stats. 1931, p. 2055; Deering's "Water—Uncodified Acts," 1962 (Pt. Two) Act 9127c, § 21; West's Water Code—Appendix, § 39-21.)[1]

This action was properly brought without filing a claim against the district.

2. Was There Evidence of Defendant's Negligence?

The second amended complaint charged in its second count that defendant created a dangerous and defective condition of the reservoir by permitting its level to be lowered in certain areas to a depth of less than 3 feet, at which time the water was murky and the shallow areas were not visible to water skiers on the reservoir; that defendant knew or should have known that this constituted a hazard to skiers, and that as a result of said dangerous and defective condition plaintiff was caused to fall from his skis and strike the bottom of the reservoir. (Actually, there was no evidence to the effect that the shallowness of the water caused the fall. The case apparently was tried on the theory that defendant's negligence caused plaintiff's injury *after* his fall from his skis.) Defendant denied any negligence and alleged contributory negligence.

█ It is well settled that a nonsuit may be granted " 'only

---

[1] The Law Revision Commission found that there was no claim requirement in the act. (Vol. 2, Cal.L.Rev.Com. p. A-7, at p. A-37.) As a result of the commission's study the 1931 act was amended in 1959 to require the filing of a claim as a prerequisite to an action against the district.

when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768]; see citations in 2 Witkin, Cal. Procedure, pp. 1857-1858.)

■ Applying that test to the evidence in the case at bench, we find substantial evidence that would have supported a verdict in favor of plaintiff.

■ Initially it must be determined what duty, if any, defendant, as lessor, owed plaintiff. Defendant's duty was to exercise reasonable care. ■ "If a landlord creates a condition on his premises which is less safe than before and where the hazards are not open and obvious in all particulars a duty is owed to tenants or invitees who were familiar with the former condition to apprise them of this increase in risk factor." (*Foster* v. *A. P. Jacobs & Associates* (1948) 85 Cal.App.2d 746, 750 [193 P.2d 971] (slippery floor in corridor; landlord liable to tenant's employee).)

■ Under the lease, and in fact, defendant retained control of the water level even though the county had control of the actual recreation activity. It is a matter of common knowledge that water skiers are bound to fall off their skis and that there is likelihood of injury to a person falling into water as shallow as 3 feet, particularly when propelled from fast moving skis. Therefore, it was a jury question as to whether the district knew or should have known that lowering the water created a dangerous condition of which the skiers were entitled to be warned, or, at the least, as to which the county should have been warned. (See 2 Witkin, Summary of Cal. Law, § 262, p. 1457; *Miller* v. *Desilu Productions, Inc.* (1962) 204 Cal.App.2d 160, 164 [22 Cal.Rptr. 36]; *Chance* v. *Lawry's, Inc.* (1962) 58 Cal.2d 368, 373 [24 Cal.Rptr. 209, 374 P.2d 185]; *Haberlin* v. *Peninsula Celebration Assn.* (1957) 156 Cal.App.2d 404, 408 [319 P.2d 418].) ■ The evidence showed that the district knew the topography of the ground below the water surface, and the location of the peaks, and that the county did not. Thus, it was for the jury to determine whether the district met its duty of reasonable care in the lowering of the water.

This is not a situation involving application of the general

rule that an owner is not subject to liability during the term of a lease for injuries to third persons upon the leased premises resulting from the condition of the premises which were delivered to the tenant in good condition or the activities of the tenant, nor with any of the recognized exceptions to this rule, other than the one dealing with retention by the owner of control of a portion of the leased premises. (See Prosser on Torts (2d ed.) p. 465.) ■ The liability of the owner here is to be determined upon a different, well settled principle of law, namely, ''A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.'' (Rest., Torts, § 360, p. 976.)

In the case at bench, the condition causing the danger was in the sole control of the district. It was active negligence, if any, rather than passive. ■ But even with passive negligence, the owner may be liable if the danger is caused by a condition in that part of the premises of which he has either sole or joint control with the lessee. ■ As pointed out in Prosser, *supra,* page 471, where the owner retains control of a portion of the leased premises, the responsibility for such portion remains upon him. ''His position is closely analogous to that of a possessor who permits visitors to enter for a purpose of his own; and those who come in the course of the expected use may be considered his invitee[s].'' (See *Schwerdtfeger* v. *State of California* (1957) 148 Cal.App. 2d 335, 345 [306 P.2d 960].) ■ ''The obligation is one of reasonable care only, and the lessor is not liable where no injury to anyone was reasonably to be anticipated. . . .'' (Prosser, *supra,* p. 472; see *Johnston* v. *De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394, 399 [170 P.2d 5].) ■ Under the circumstances of this case the question of whether injury to water skiers was reasonably to be anticipated is not a question of law but one for the jury.

The situation here is different from that in *Schwerdtfeger, supra,* where the court held that the lessor state was not

liable although a tenant in common with Marine Terminals on the state owned pier, because the instrumentality which caused the injury there was under the exclusive control of the lessee. In our case the county, although it had control of the recreational activities on the water of the lake, did not have exclusive control of the water. Actually, as to lowering the level of the water, defendant district had exclusive control thereof. ▮ Quoting out of context from *Schwerdtfeger, supra,* page 345, "Generally speaking, the duty to exercise due care towards invitees is imposed only on the possessor of the property because he, rather than the title holder, is in a position to learn of hazards and to correct them. *It would be unjust to put the invitor obligation on someone who could not, practically, correct the defective condition*" (italics added), defendant contends that there was nothing that it could do to correct the dangerous condition caused by the lowering of the water, because it was under a duty by law to release the water for water conservation purposes. Following the above quoted language the court in *Schwerdtfeger* said (p. 345): "But if the landlord retains control over any portion of the leased premises he is deemed to be an invitor of invitees of the tenant as to the portion of the premises over which he retains control. [Citation.] Thus, a person legally can be the invitee of both the tenant and the landlord if both control the premises. [Citation.]" Even though defendant, because of its duty, could not stop lowering the water in the lake, it could warn of the shallowness of the water and the ensuing danger. ▮ Applicable here is the language hereinbefore quoted from *Foster* v. *A. P. Jacobs & Associates, supra,* 85 Cal.App. 746, where the plaintiff, an employee of the tenant, was injured by falling on the linoleum newly waxed by the owners.

The lease contains a provision: "Lessee shall have the full control and authority over the use of the above described lands and water surface leased to Lessee for recreational purposes and Lessee may control, regulate and supervise the public use thereof." Lessee adopted an ordinance to the effect that the county parks and recreation director shall designate appropriate boating and water skiing zones and uses which shall be appropriately posted. Likewise, the district exercised no control over recreation or water skiing. There are also in the lease clauses holding harmless the district and indemnifying it against any injury to persons or property by any

use of the lake or its recreational facilities, and providing that both parties will maintain liability insurance. These facts, however, did not and could not release the district from any liability to third persons, caused by its negligence. (Civ. Code, § 2777; *Both* v. *Harband* (1958) 164 Cal.App.2d 743, 747 [331 P.2d 140].) ▮ One cannot contract away his liability to third parties for his own active negligence. (See *Barkett* v. *Brucato* (1953) 122 Cal.App.2d 264, 277-278 [264 P.2d 978]; 1 Witkin, Summary of Cal. Law, p. 230.)

The situation in this case was an unusual one. Although the county had full control of the recreational use of the lake, the district had full control of the water level and the water itself. The release of the water caused a condition to exist which the jury could have found to be known only to the district, namely, that the lake in spots was not safe for skiers. It is true that the county knew that the district would lower the water, but the jury could have found under the evidence that the county did not know at what point this lowering would become dangerous for any particular recreational use. This knowledge could have been found to be that of the district.

▮ Defendant cites *Lattanzi* v. *San Moritz Club* (1962) 202 Cal.App.2d 546 [20 Cal.Rptr. 847], where the court said: "It is·true that a landowner owes a duty to an invitee of warning of an existing dangerous condition, but there is no such duty where the dangerous condition is so obvious that the invitee could reasonably be expected to see it" (p. 549) and contends that the "so-called dangerous condition of receding water was open and obvious to water skiers that such invitees could reasonably be expected to see and recognize it." However, there was evidence in this case, including the testimony of the park ranger, that in the area of the accident the water was murky and visibility through it did not exist for more than 2 feet. As said in *Lattanzi* (p. 549), concerning the question of the obviousness of the dangerous condition, this was a factual question for the trier of fact, in our case, the jury.

▮ The jury could have found that defendant breached its duty of reasonable care to plaintiff when, in light of its knowledge that the reservoir was being used for water skiing and that there were shallow areas, it failed to put up warning signs or furnish the county with information as to water re-

duction, or a topographical map which would indicate the shallow areas.

It cannot be said as a matter of law that plaintiff knew of the shallowness of the water at the point where he was skiing nor that he was guilty of contributory negligence in skiing there because he knew that the level of the lake was reducing from time to time. These were matters for the jury to pass upon. Likewise, the question of whether or not defendant's acts were the proximate cause of the accident was also a question for the jury. It cannot be said as a matter of law that they were not.

The judgment of nonsuit on the second count was improper.

### 3. NUISANCE.

The first count alleged that the shallowness of the water and its murky condition constituted a dangerous and serious obstruction to the use of the reservoir by the public and constituted a nuisance. There was no evidence of any obstruction of the use of the water. Moreover, the nuisance contention is answered by section 3482, Civil Code: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." The activity of releasing water from the reservoir is carried out as one of the express powers of the district. (Stats. 1957, p. 1579, Deering's "Water—Uncodified Acts," 1962 (Pt. Two) Act 9127c, § 2; West's Water Code—Appendix, § 39-2.) The nonsuit on the first count was proper.

The judgment on the first count is affirmed. The judgment on the second count is reversed. Plaintiff will recover costs.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied August 13, 1963, and respondent's petition for a hearing by the Supreme Court was denied September 18, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.