VERNON J. LaBEAU v. WILBUR A. BUCHANAN.

236 N. W. 2d 789.

December 12, 1975—Nos. 45425, 45458.

---

. *Charles W. Anderson & Associates,* for appellant.

*Rider, Bennett, Egan, Johnson & Arundel, Richard J. Nygaard,* and *William J. George,* for respondent.

PER CURIAM.

This appeal arose from an action in the Anoka County District Court for personal injuries sustained when the truck plaintiff, Vernon J. LaBeau, was operating was struck from the rear by a truck driven by the defendant, Wilbur A. Buchanan. The jury by special verdict found that defendant was not negligent in the operation or maintenance of his vehicle and that plaintiff suffered damages in the amount of $110.40 for his personal injuries and $140 for his medical expenses. Plaintiff appeals from the judgment and from an order denying his motion for a new trial on all issues. We affirm.

Upon appeal, plaintiff contends that the trial court erred in failing to grant his motion for a directed verdict in that defendant was negligent in the maintenance of his brakes as a matter of law, and plaintiff further contends that he is entitled to a new trial on the issue of defendant's liability and on the issue of damages.

On February 24, 1972, plaintiff and defendant were both employed under the general supervision of Park Construction Company in a landmoving operation in Fridley. Defendant owned and operated his own truck, a 1969 Ford dump truck equipped with factory-installed Bendix Wedge air brakes, under the name of Buchanan Trucking. Plaintiff, a 22-year-old male, was employed by J & L Construction Company and, at the time of the accident, was operating a 1972 Chevrolet dump truck, equipped with another type of air brakes.

Both parties were engaged in the hauling of sand from the construction site north on Highway 47 and were traveling with full loads of sand when the accident occurred. There is no dispute as to the basic events leading to the collision. Defendant was

driving north on Highway 47 and had had no problems with brake performance, either with a full or empty load. There are 5 stop signs on Highway 47 between 44th and 57th, the intersection where the collision occurred, and defendant had no difficulty at any of them. He was proceeding to 57th at a speed of 35 to 40 miles per hour within the 45 miles per hour speed limit. Approximately 150 feet from the intersection he began gearing down and, as he applied his brakes, he became aware that they were not functioning. He had been traveling in the right lane, but switched to the left to avoid striking a small car stopped ahead and struck plaintiff's vehicle, which was stopped at the red light at the intersection. Plaintiff saw defendant's truck moving toward him and tried to brace himself, but upon impact, struck his head upon the windshield and the back of the cab.

Defendant testified that the buzzer, which sounds to indicate a malfunction or loss of air pressure in the brake lines, did not sound until a moment before the impact. He further testified that, as he had no mechanical knowledge, he relied exclusively upon Bill Boyer Ford and any maintenance information for all repairs or scheduled maintenance. The last service before the accident was completed in the fall of 1971 prior to the storage of the vehicle for the 3-month winter layoff. Defendant assumed that general maintenance procedures were followed by Bill Boyer Ford, but was not sure.

Plaintiff's employer, plaintiff, and the shop foreman at Bill Boyer Ford all testified as to their knowledge of the mechanics of air brakes and the required maintenance. Richard Robbins from Bill Boyer Ford, whose testimony is most relevant here, was familiar with the Bendix Wedge air brake and explained that he normally recommends regular maintenance and that the brakes be re-examined in the spring before seasonal work is commenced. He testified that the brakes of this type are self-adjusting and, if working properly, need no manual adjustment. Although truck gauges normally indicate excessive loss of pressure, there was the possibility that frequent stops in a short

period of time could explain failure of the air reserve to build a sufficient supply which could cause the brakes not to function.

Plaintiff and Alexander Juarez, owner of J & L Construction Company and plaintiff's employer, although unfamiliar with the Bendix Wedge brake, both indicated that they normally inspect their air brakes on a daily basis, particularly when frequent stoppage is required in an operation. Plaintiff also explained that routine procedure upon removing a vehicle from winter storage is to bleed brake systems to remove any collected condensation.

As there is no dispute as to whether the brakes did fail, the plaintiff initially contends that defendant's conduct in failing to comply with Minn. St. 169.67 constitutes negligence as a matter of law and that the evidence establishes that compliance with the standard of maintenance would have disclosed the causative malfunction. He concludes there is no fact question for jury consideration and that, pursuant to the standard set forth in Jacoboski v. Prax, 290 Minn. 218, 187 N. W. 2d 125 (1971), his motion for a directed verdict should have been granted.

Minn. St. 169.67, subd. 1, provides:

"Every motor vehicle, other than a motor-cycle, when operated upon a highway, shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. * * *"

Violation of this statute is not negligence per se, but, as correctly interpreted by the trial court, prima facie evidence of negligence. Minn. St. 169.96.

The standard relied upon in reviewing a lower court's decision to grant or deny a motion for a directed verdict was succinctly stated in Lovejoy v. Minneapolis-Moline Power Implement Co. 248 Minn. 319, 325, 79 N. W. 2d 688, 693 (1956), quoting with approval from Hanson v. Homeland Ins. Co. 232 Minn. 403, 404,

45 N. W. 2d 637, 638 (1951). We there pointed out that such a motion—

" '* * * accepts the view of the *entire* evidence most favorable to the adverse party and admits the credibility (except in extreme cases) of the evidence in his favor and all reasonable inferences to be drawn therefrom,' and such motion 'should be granted only in those unequivocal cases where (1) *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case.' "

See, also, Jacoboski v. Prax, *supra;* Nelson v. Nelson, 282 Minn. 487, 166 N. W. 2d 70 (1969).

Applying this test to the evidence of record, we are unable to reach the conclusion proffered by plaintiff. As pointed out by the defendant, although the expert witness of plaintiff, Mr. Robbins, did testify that he normally recommends regular maintenance, he also concluded that the brakes used here were self-adjusting and if working properly need no manual adjustment. Directly at issue then is whether defendant regularly and normally maintained his truck and its brakes in proper working order. There is substantial evidence that the defendant presented the truck for maintenance in the fall and that the brakes were working properly at all times prior to the accident. It is therefore apparent that it was for the jury to determine whether, in light of all evidence, defendant was negligent in his maintenance of the brakes and the denial of the motion for a directed verdict must be affirmed.

Plaintiff contends that the jury's finding that defendant was not negligent in the maintenance of his truck was perverse, mistaken, and entirely unjustified by the evidence, citing Peterson v. Chicago Great Western Ry. Co. 106 Minn. 245, 118 N. W. 1016 (1908), in which we determined upon a review of the evidence, that although a directed verdict would not have been proper, the

great preponderance of the evidence dictated that a new trial should have been granted.

A review of the record in this case leads to the conclusion that the verdict is not manifestly contrary to the great weight of the evidence. There is substantial evidence that defendant relied upon Bill Boyer Ford for complete maintenance and that he had no warning that the brakes were not functioning properly. In addition, there is no concrete evidence that maintenance or inspection would have disclosed the problem, that the brake failure might not have occurred spontaneously or, in the words of one expert witness, that it wasn't the result of several stops within shortened time intervals which prevented the necessary reaccumulation of air pressure. There is therefore sufficient evidence upon which to sustain the jury verdict with regard to liability and negligence. Hestad v. Pennsylvania Life Ins. Co. 295 Minn. 306, 204 N. W. 2d 433 (1973).

The final contention of plaintiff is that the damages are inadequate. Since there is no liability on the part of the defendant, there is no need to discuss the issue of damages.

Affirmed.