Gary MARLOW, Appellant,

v.

CITY OF COLUMBIA HEIGHTS,
Respondent.

No. 49020.

Supreme Court of Minnesota.

Sept. 21, 1979.

Rehearing Denied Oct. 23, 1979.

Bruce C. Douglas, and Steven D. Emmings, Minneapolis, for appellant.

Richard D. Allen, Minneapolis, for respondent.

Heard before ROGOSHESKE, WAHL, and MAXWELL, JJ., and considered and decided by the court en banc.

STEPHEN L. MAXWELL, Justice.*

Plaintiff, Gary Marlow, while water-skiing with one ski on Silver Lake, released the tow rope and glided toward shore at the public boat launching site owned by defendant, City of Columbia Heights (city). When plaintiff's ski touched the lakebed, he stepped out of the ski, took a few steps, stepped on something in the water, and severely cut the bottom of his left foot. He brought a negligence action against the city. At the close of the plaintiff's case presented to a jury, the city moved on various grounds for a directed verdict and a judgment of dismissal. The court granted the motion, and plaintiff appealed. We affirm, deciding that although the plaintiff's claim is not barred by the "discretionary function or duty" exception of the municipal tort claims act, Minn.St. 466.03, subd. 6, the directed verdict for defendant was

properly granted because plaintiff failed to sustain his burden of proof on the element of causation—i. e., to show that defendant's conduct was the actual and proximate cause of plaintiff's injury.

Silver Lake Landing is a public park with a boat launching site on the western shore of Silver Lake in Columbia Heights, Minnesota. The park is owned by the defendant and is regulated, controlled, and maintained by the Columbia Heights Park Board.

The land portion of the boat launching area consists of a paved access road, parking lots, and trash barrels. The paved roadway extends to the general area of the shoreline. The launching area is separated from adjacent private property on the north and south sides by a 6-foot-high chain link fence which extends into the lakebed and water at varying lengths, depending on the level of the lake. A storm sewer culvert is located inside of the fenced area and south of the launching area. The ground area is policed for refuse and debris by employees of the Columbia Heights Park Department at least once a week. The adjacent water area and lakebed is not policed.

There was uncontradicted testimony that Silver Lake Landing is commonly used for water-skiing and swimming. At the time of the incident, there were no signs prohibiting swimming or warning of any danger posted in the area.

The incident occurred during the evening of June 29, 1974. Plaintiff had been water-skiing on a slalom ski (one designed with two rubber "boots" to accommodate both feet for single-ski skiing). He released the tow rope and, while still upright on the ski, glided into shore at a point between the south end of the blacktopped landing and the drainage culvert. The ski touched the bottom of the lakebed about 10 or 15 feet from shore. When it came to rest, plaintiff stepped out of the rubber boots and took 3 or 4 steps toward shore to maintain his balance. On his last step, about 3 to 5 feet from shore where the water was about 1

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

foot deep, he stepped on a sharp object, severely cutting the bottom of his left foot. The pain caused him to sit down in the water.

Plaintiff's brother, who was piloting the towing boat, saw plaintiff sit down in the water and arrived at the scene after plaintiff was taken out of the water. The brother checked the area of lakebed where he had seen plaintiff sit down in the water and found, partially covered by sand or gravel, a broken glass jar, a broken beer bottle, and a rusty beer can. No sharp rocks "bigger than a pebble" were found. Plaintiff's brother threw the three objects into a trash can at the landing.

At the close of the plaintiff's case, which was presented to a jury, defendant moved for a directed verdict, arguing in its supporting memorandum that the city had no notice of the hazard, that the plaintiff had failed to identify the object which cut him, and that if the object were, for example, a broken jar, it could have been thrown in the lake a half hour before Marlow arrived that day. The trial judge granted the motion[1] and dismissed plaintiff's claim with prejudice.

The following issues are presented on appeal: (1) Was plaintiff's claim barred by the "discretionary function or duty" exemption of the municipal tort claims act, Minn.St. 466.03, subds. 1 and 6? (2) If not, was plaintiff's evidence sufficient to sustain a jury verdict for plaintiff?

1. The trial judge's order included no memorandum or other document giving the court's supporting rationale. The transcript of the argument on the motion indicates that the judge's decision rested on his view that the city had no duty to police the lakebed for trash, and on the plaintiff's failure to prove exactly what object cut his foot, and how and when that object got to the lake bottom.

2. Although the defendant did not plead the "discretionary function" exception of § 466.03, subds. 1 and 6, as a bar in its answer, its memorandum in support of its motion for directed verdict, apparently submitted to the judge at the close of the plaintiff's case, did raise this issue.

3. The relevant provisions of the municipal tort liability statute, Minn.St. c. 466 are:

1. The defendant argues[2] that its "decision and determination * * * not to search the public waters of Silver Lake for sharp objects was a 'discretionary act'" for which it "is immune from legal liability" under Minn.St. 466.03, subd. 6,[3] which exempts from municipal tort liability "[a]ny claim based upon the performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

In *Silver v. City of Minneapolis*, 284 Minn. 266, 170 N.W.2d 206 (1969), this court held that the city's choice of how to deploy police and firefighting resources in the face of rumored impending riots fell within the "discretionary function" exception of § 466.03, subd. 6. We quoted from *Dalehite v. United States*, 346 U.S. 15, 35, 73 S.Ct. 956, 968, 97 L.Ed. 1427, 1440 (1953), rehearing denied, 346 U.S. 841, 880, 74 S.Ct. 13, 98 L.Ed. 362, which discussed the corresponding "discretionary function" exception in the Federal Tort Claims Act, 28 USCA, § 2680(a):

"* * * '[D]iscretionary function or duty' * * * includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." 284 Minn. 269, 170 N.W.2d 208.

In *Hansen v. City of St. Paul*, 298 Minn. 205, 214 N.W.2d 346 (1974), we held that the

§ 466.02: "Subject to the limitations of sections 466.01 to 466.15, every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."

§ 466.03: "Subdivision 1. Section 466.02 does not apply to any claim enumerated in this section. As to any such claim every municipality shall be liable only in accordance with the applicable statute and where there is no such statute, every municipality shall be immune from liability.

* * * * * *

"Subd. 6. Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

city's failure to stop dogs "known to be dangerous, vicious, and impoundable" from prowling upon public sidewalks was not immune from liability as a discretionary function under Minn.St. 466.03, subd. 6, and said:

"* * * [J]udicial interpretations of the 'discretionary acts' exception find greater applicability (and therefore immunity) for decisions made on the executive (planning) level of conduct than on the operational level." 298 Minn. 211, 214 N.W.2d 350.

█ In the instant case, plaintiff alleges negligence in failing to maintain the facility in a safe condition or to warn of hazards. Plaintiff's claim is one of the city's "operational" failure following the "planning" decision to operate and maintain the public landing. See, *Hansen, supra.* Such a failure does not appear to be the sort of situation which the legislature intended to exempt from liability. Therefore, as applied to this case, the discretionary function or duty "exception" does not include the city's duty of safe maintenance of the Silver Lake Landing public park, and defendant does not come within the immunity provision of Minn.St. 466.03, subd. 6.[4]

(2) Having decided that this case does not fall within the "discretionary acts" exception to municipal tort liability, we consider whether the trial court correctly directed a verdict for defendant on the merits. Rule 50.01, Rules of Civil Procedure, provides that in ruling upon a motion for a directed verdict, "[i]f the evidence is sufficient to sustain a verdict for the opponent, the motion shall not be granted." A motion for a directed verdict " 'accepts the view of

the *entire* evidence most favorable to the adverse party and admits the credibility (except in extreme cases) of the evidence in his favor and all reasonable inferences to be drawn therefrom,' and such motion 'should be granted only in those unequivocal cases where (1) *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case.' " (Citations omitted.) *LaBeau v. Buchanan,* 306 Minn. 347, 351, 236 N.W.2d 789, 791 (1975).

█ To sustain a claim of liability for negligence, plaintiff must prove that defendant acted or failed to act such that a duty owed by defendant to plaintiff was breached and that such negligence was the actual and proximate cause of plaintiff's injury. If, as a matter of law, plaintiff failed to prove any of the above elements, then the order dismissing plaintiff's claim must be affirmed.

█ Our review of the evidence compels the conclusion that plaintiff failed to establish a prima facie case of liability for negligence because plaintiff's evidence was insufficient to support a finding of actual causation. Stated another way, even assuming *arguendo* that a jury would find that the city's conduct breached a duty of care owed to plaintiff, only sheer speculation would support a finding that *but for* the city's negligent conduct plaintiff's injury would not have occurred. Thus, we affirm the judgment of dismissal, expressing no opinion on the question of whether the city's conduct [5] was negligent or plaintiff's conduct contributorily negligent.

4. See, generally, 49 Minn.L.Rev. 142, 147, n. 22 (discretionary function re: duty of municipalities to supervise activities at public recreational facilities); *The Discretionary Exception and Municipal Tort Liability: A Reappraisal,* 52 Minn.L.Rev. 1047, especially 1064–69; Davis, Administrative Law Treatise, §§ 25.14, 25.17.

5. Minn.St. 412.521 requires the Columbia Heights Park Board "to maintain, beautify and care for park property." It would be reasonable to infer from this statutory mandate a duty on the part of the park board of safe and

nonnegligent maintenance. This would also impose on the board a concomitant duty of ensuring reasonable safety as to the foreseeable use of those requisite environs, i. e., a reasonable part of the lakebed, to facilitate the purpose of the Silver Lake Landing boat launching site. *Hanson v. Christensen,* 275 Minn. 204, 145 N.W.2d 868 (1966); *Montes v. Betcher,* 480 F.2d 1128 (8th Cir. 1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972). Accord, *Isler v. Burman,* 305 Minn. 288, 232 N.W.2d 818 (1975).

The evidence going to causation is circumstantial, permitting more than one reasonable inference. Plaintiff was unable to identify the precise object that caused the cut. On three different occasions during deposition plaintiff stated that he thought he had stepped on a rock. The plaintiff's brother found only three objects—a rusted tin can, a broken beer bottle, and a broken Mason jar, partly buried in the sand in the general area where plaintiff was injured. It is eminently clear that plaintiff's allegation that his injury resulted from stepping on glass has its origin in his brother's assiduous and tendentious statement that plaintiff had stepped on glass.[6] Thus, from the evidence a jury would have to speculate as to what cut plaintiff's foot.

■ But though the jury would have to speculate as to what cut plaintiff's foot, we do not consider this dispositive. Rather, even assuming *arguendo* that plaintiff cut his foot on one of the objects that plaintiff's brother found and that the city was negligent, the trial court still would be compelled to set aside a verdict in plaintiff's favor because of plaintiff's inability to prove how and when the cutting object got to the area of the lakebed where plaintiff stepped on it.

A review of the testimony shows that in 1973 plaintiff's brother, Lauren Marlow, purchased the boat that was being used at the time of the incident; that in 1973 and 1974 the plaintiff, his wife, his brother, and his sister-in-law had frequently used the site to launch the boat and water-ski; that plaintiff had water-skied from the site 75 to 100 times in 1973 and 30 to 40 times in 1974 up until the time of the accident on June 29, 1974, and had never stepped on anything sharp or injured his foot at the launching site.[7] Considering the churning of the relatively shallow water from launching and starting of boats and water-skiing and the fact that plaintiff and his brother used the site for launching of the boat and water-skiing approximately 300 times between them without ever stepping on anything sharp or injuring their feet, it would require sheer speculation to determine when and how the cutting object—whatever it was—got there. Speculation as to the cutting object and when and how it got there renders equally speculative the question of whether the dangerous condition would have been discovered in the exercise of reasonable care—i. e., whether defendant's negligent conduct was the actual cause of plaintiff's injury.

Viewing the entire evidence and the reasonable inferences drawn therefrom most favorable to the adverse party to the motion for directed verdict, we conclude it would clearly be the duty of the trial court in light of the evidence as a whole to set aside a contrary verdict as being manifestly against the entire evidence. *LaBeau v. Bu-*

Whether the city was negligent in its maintenance of the lakebed within a reasonable area of the launching site ordinarily would be a jury question. Governmental units have been held liable for negligence in connection with the operation of recreational facilities. See, *Larson v. Santa Clara Valley Water Conservation District*, 218 Cal.App.2d 515, 32 Cal.Rptr. 875, 8 A.L.R.3d 665 (1963) (water-skiing); *Truckee-Carson Irrigation District v. Wyatt*, 84 Nev. 662, 448 P.2d 46 (1968) (water-skiing—submerged object); and cases collected at 85 A.L.R.3d 750, 768 (swimming facility owners).

6. Plaintiff testified that while at the hospital following the incident he told the doctor, "[M]y brother stated I had stepped on glass." An objection was sustained and the answer was stricken. Plaintiff also testified, "I know that I stepped on glass because my brother told me I did." An objection was sustained.

7. On cross-examination Lauren Marlow was asked the following questions and gave the following answers:

"Q. * * * was your brother, Gary, with you most of the time or not?

"A. Quite a few of the times, yes.

"Q. Okay. And I gather you agree with him that you didn't find anything there before?

"A. I have.

"Q. Oh, you have?

"A. Yes, I have.

"Q. Did you tell Gary about that?

"A. No, I didn't.

"Q. Never mentioned it to him?

"A. No, because I figured that it's a public beach or a public boat landing the City is supposed to clean it."

What Lauren found was never disclosed.

**394**

*chanan,* 306 Minn. 347, 351, 236 N.W.2d 789, 791 (1975).

. Affirmed.

OTIS, J., took no part in the consideration or decision of this case.