Steve WEAR, et al., Appellants,

v.

**BUFFALO–RED RIVER WATERSHED DISTRICT, Defendant and Third–Party Plaintiff, Respondent,**

v.

Houston Engineering, Inc., Third–Party Defendant, Respondent,

Lyle Wilkens, Inc., Third–Party Defendant, Respondent.

No. C0–00–908.

Court of Appeals of Minnesota.

Feb. 13, 2001.

Dan D. Plambeck, Stefanson, Plambeck & Foss, Moorhead, MN, for appellants.

Dan T. Ryerson, John E. Varpness, Gislason, Martin & Varpness, P.A., Edina, MN, for respondent Buffalo Red River Watershed District.

Duane R. Breitling, Ohnsdtad Twichell, P.C., Fargo, ND, for respondent Houston Engineering, Inc.

Barton J. Cahill, Cahill & Maring P.A., Moorhead, MN, for respondent Lyle Wilkens, Inc.

Considered and decided by
TOUSSAINT, Presiding Judge,
ANDERSON, Judge and MULALLY, Judge.*

## OPINION

G. BARRY ANDERSON, Judge.

Appellant property owners contend that respondent watershed district negligently improved a ditch where, after heavy rainfall, the ditch overflowed, causing property damage. Because the watershed district did not breach its duty by improving the ditch to withstand a ten-year event, we affirm.

## FACTS

On May 17, 1996, over four inches of rain fell in the Buffalo Red River Watershed District in Clay County, Minnesota. As a result of the heavy rainfall, water ran over the west bank of Clay County Ditch No. 2 causing damage to nearby property owned by appellants Steve Wear and Wayne and Donna Moll.

Clay County Ditch No. 2, originally constructed in 1905, is approximately nine miles long, with lateral arms collecting drainage through natural and man-made waterways. Over time, the ditch fell into disrepair. As a result, in May 1995, respondent Buffalo Red River Watershed District (BRRWD) entered into a contract with Lyle Wilkens, Inc. (Wilkens) to improve the ditch.

Respondent Houston Engineering, Inc. (Houston) designed the ditch to withstand a ten-year event, that is, a rainstorm of a severity occurring, on average, once every ten years. The Engineer's Final Report, outlining the ditch improvements, stated that "[f]or this area we have found that a ditch designed to carry a 10 year storm is the most cost effective." To avoid significant landowner assessments, Houston and BRRWD also decided that culvert replacement work for the ditch would be completed at a later date, funded by a state bridge-bonding program.

After the construction was completed in late 1995, appellant Wear noticed that the

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

new spoil bank was lower than the old bank, and expressed his concerns to BRRWD. Wear testified that he observed water spill over the previous bank at that location several times, added more dirt to the previous spoil bank to direct any overflow across the highway, and requested to BRRWD that similar action be taken to raise the spoil bank again. The minutes from a BRRWD board meeting reflect that the BRRWD had "directed" Wilkens to raise the spoil bank. BRRWD, however, repudiated this statement at trial, contending it never actually directed Wilkens to raise the spoil bank, and "directed" was a poor word choice for the meeting minutes.

Engineer testimony at trial contradicted Wear's claim that the spoil banks should have been raised. Houston's engineer testified that the new spoil banks were designed so that excess water would overflow onto fields, rather than over public roads. The Clay County Engineer agreed, testifying that public policy requires that spoil banks be lower than road elevations. The county engineer also stated that no one, including Wear, had permission to raise spoil banks to direct water across a public road.

On May 16, 1996, just prior to the flooding, Houston and BRRWD inspected the ditch to determine whether any further work was needed to satisfy the contract, and noted, in writing, Wear's concerns about the lowered spoil bank. The spoil bank, however, was not raised.

On the evening of May 17, 1996, water from the heavy rain ran over the west bank of Clay County Ditch No. 2 and damaged appellants' property. Appellants sued, alleging negligence. After a bench trial, the district court concluded that appellants failed to establish negligence or any other viable theory for recovery.[1] The district court denied appellants' motion for amended findings, and this appeal followed.

## ISSUE

Did the district court err in concluding that appellants did not prove Buffalo Red–River Watershed District was negligent in failing to construct a higher spoil bank of a county ditch?

## ANALYSIS

■ Appellants claim their flood damage stems from respondents' negligent improvement of Clay County Ditch No. 2. To prevail on a negligence claim, appellants must establish (1) the existence of a duty; (2) breach of that duty; (3) that the breach proximately caused the injury; and (4) injury in fact. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995).

The district court did not provide a detailed explanation for its conclusion that appellants failed to establish liability. Appellants do not challenge the district court's finding that heavy rainfall caused the ditch to overflow and damage appellants' property, so the questions of causation and damages are not at issue. Accordingly, the critical questions are whether a duty existed and, if so, whether that duty was breached.

### A. Duty

■ The existence of a legal duty is generally a question of law, subject to de novo review. *ServiceMaster v. GAB Bus. Servs., Inc.,* 544 N.W.2d 302, 307 (Minn. 1996). The plaintiff in a negligence action has the burden of proof. *Marlow v. City of Columbia Heights,* 284 N.W.2d 389, 392 (Minn.1979).

Appellants claim Minn.Stat. § 103D.631, subd. 1 (1996) gives rise to a duty; that statutory provision requires watershed districts to maintain projects in a condition to

1. The district court's findings and conclusions do not address respondent's assertion of statutory immunity. Because we have determined that the district court did not err in concluding that respondent was not negligent, and because the parties did not argue immunity on appeal, we do not address it.

accomplish the purposes for which they were constructed. Appellants also note that an engineer has the ability to modify plans and specifications as the work proceeds and as circumstances require. Minn.Stat. § 103E.501, subd. 4 (1996).

Appellants correctly point out that BRRWD has a duty to maintain its ditches, and to complete the "purpose" of any construction. The "purpose" of the construction in this case, however, is disputed.

Appellants, pointing to language in the Engineer's Final Report, contend that the purpose of the construction was to "prevent crop loss in [an] area which has been subject to several fairly high rainfall years recently." Although the background section of the Engineer's Final Report contains that language, it appears as part of a general explanation concerning the necessity of improvements to Ditch No. 2. BRRWD maintains that the purpose of the construction was to create a ditch system that could handle the run-off occurring during a ten-year event.

At trial, an engineer testified regarding the purpose of the project:

Q:    In other words, the purpose of this project was to increase the flow of water through the ditch and do some badly needed repairs, prevent some crop losses [to] farmers. And whether or not this particular spoil bank was raised[,] or lowered[, or] remains the same has nothing to do with the purpose of that project, right?

A:    Essentially, what we were trying to do in the design of the ditch is to pick a specific rain event, in this case it was a 10 year event or a storm that would happen on average once every ten years, and we try to get the water surface profile in the ditch below the elevation of the fields so that the fields will be able to drain into the ditch, the ditch will transport water away[,] and standing water will not kill the crops.

Although the district court did not make a specific finding on the purpose of the con-

struction, the engineer's testimony was uncontradicted. The purpose of the improvements was to allow the ditch to handle the run-off created by a ten-year event. Implicitly, the improved ditch would prevent crop-loss from overflow caused by less severe storms, but nothing in the record established that prevention of all crop losses was the purpose of this project.

Because it is clear that the ditch was designed and constructed to handle a ten-year event, the next question is whether BRRWD had a duty to improve the ditch to handle a more severe rainfall. An engineer on the project analyzed the total expense of constructing a ditch that would never overflow. His analysis is reflected in the final report:

[F]or this area we have found that a ditch designed to carry a 10-year storm is the most cost effective. For example, to construct a ditch that would contain the discharge from a storm that will probably be exceeded only once every 25 years would result in a well functioning project, however, since the cross-section of the ditch would be extremely large, the cost of the ditch would be more than the benefits that could be derived from it. Therefore, the ditch has been designed to have a capacity equal to the ten-year storm.

Appellants failed to provide expert or other testimony establishing that the ten-year event standard was inappropriate, that respondents failed to design and construct the ditch improvements to specifications, or that such improvements must be designed and constructed to prevent all crop losses. Thus, on this record, we conclude that BRRWD's duty, pursuant to Minn.Stat. § 103D.631, subd. 1, was to improve Ditch No. 2 to withstand a ten-year event.

**B.   Breach**

Appellants argue that BRRWD breached its statutory duty to maintain the ditch. Specifically, appellants argue that

BRRWD (1) knew of Wear's concerns that the spoil bank was lowered as a result of the improvements and failed to correct the problem and (2) could have ordered the county to replace the culverts, but did not. But appellants' arguments are based on a flawed premise: that the purpose of the improvements was to prevent all crop losses.

In a negligence action, whether a breach of a duty occurred is a question for the fact finder. *Smith v. Carriere,* 316 N.W.2d 574, 575 (Minn.1982). A district court's findings of fact will not be reversed on appeal unless clearly erroneous. Minn. R.Civ.P. 52.01. A clearly erroneous finding is one that is palpably and manifestly against the weight of the evidence. *Enderson v. Kelehan,* 226 Minn. 163, 169, 32 N.W.2d 286, 289–90 (1948) (involving surface drainage rights).

Appellants have not shown that BRRWD failed to fulfill its duty to improve Clay County Ditch No. 2 to handle a ten-year event, the purpose of the construction. Appellants also do not dispute the engineer's testimony that over four inches of rain in one evening exceeds the "ten-year event" standard. BRRWD's failure to do what Wear requested, in addition to appellants' property damage, does not establish any breach of BRRWD's duty to maintain the ditch to withstand flooding up to and including a ten-year event.

Appellants cite *Hansen v. City of St. Paul,* 298 Minn. 205, 214 N.W.2d 346 (1974) to support the theory that respondents breached their duty by failing to raise the spoil banks. In *Hansen,* the supreme court concluded that a city could be held liable in tort for permitting dogs the city knew to be dangerous, vicious, and impoundable to prowl uncontrolled on public sidewalks. *Id.* at 209–10, 214 N.W.2d at 349. Because the city knew of the danger and waited too long to apprehend the dogs, the court concluded that the city could be held liable to a victim of the attack. *Id.* But *Hansen* is distinguishable.

While the plaintiff in *Hansen* proved that the city failed to maintain safe streets for its citizens, appellants have not shown that BRRWD failed to maintain the ditch in accordance with its duty.

Appellants also contend that BRRWD breached its duty by not compelling immediate replacement of culverts or an increase in the hydraulic capacity of existing culverts. But Minn.Stat. § 103E.525, subd. 3 (1996), states that a proper road authority must construct required culverts within a reasonable time and only if the road authority does not, the drainage authority "may" order culverts constructed. "May" is permissive, not mandatory. *See* Minn.Stat. § 645.44, subd. 15, 16 (2000). In addition, even if true, these alleged failures would not constitute a breach of BRRWD's duty to improve Ditch No. 2 to withstand a ten-year event; appellants failed to establish that new culverts or increased hydraulic capacity were necessary to equip the ditch system to handle a ten-year event. Accordingly, appellants' argument fails.

### C. Reasonable Use Doctrine

Appellants also rely on the reasonable use doctrine, which states that if certain conditions are met, a landowner acting in good faith has the right to drain surface water across the land of a neighbor. *Matter v. Nelson,* 478 N.W.2d 211, 214 (Minn. App.1991) (citations omitted). Appellants argue that respondents failed to analyze the benefits and harms associated with lowering the spoil bank before the new culverts were installed, and failed to analyze the risks and benefits of any possible solutions in response to Wear's concerns about the height of the spoil banks.

Respondents challenge this theory on procedural grounds, stating that it was not argued at trial. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (issues not raised in district court generally may not be considered for first time on appeal). Appellants correctly note that they re-

ferred to the reasonable use doctrine in their pretrial statement. But appellants did not argue this theory during trial. The reasonable use doctrine again was raised in appellants' post-trial motion. Because the district court was faced with the arguments for the first time in a post-trial brief, we conclude they were not adequately raised in the district court and are not properly before us.

Even if this issue were properly before this court, appellants' argument focuses on BRRWD's failure to take action. BRRWD, however, discharged any duty it had to improve Ditch No. 2 and was not required to take actions inconsistent with the purpose of the project and inconsistent with public policy and public safety.

## DECISION

The watershed district did not breach its duty to improve a ditch by constructing it to withstand a ten-year event. The district court properly rejected the landowner's negligence claim.

**Affirmed.**