*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1715, A16-0029**

Eric Wong,
Respondent,

vs.

Chatterbox Pub Enterprises, Inc.,
Defendant,

Tyrone Sharpe,
Appellant.

**Filed August 1, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CV-14-2417

Paul R. Hansmeier, Class Justice PLLC, Minneapolis, Minnesota (for respondent)

Susan Dickel Minsberg, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Following a bench trial on respondent's claims of discrimination in violation of the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA), appellant, the owner of a building leased to codefendant restaurant, challenges the district

court's determinations that respondent had standing to bring this suit, that appellant and his codefendant violated the ADA and the MHRA, that respondent was the prevailing party under the ADA and the MHRA, and that remediation had not rendered respondent's claims moot. Appellant also challenges the district court's award of attorney fees and costs to respondent. We affirm.

## FACTS

On January 15, 2014, respondent Eric Wong sued defendant Chatterbox Enterprises, Inc. (the Chatterbox Pub) and appellant Tyrone Sharpe, alleging violations of the ADA and the MHRA and seeking injunctive relief. A bench trial was held on April 13, 2015.

**The Parties**

The Chatterbox Pub is a bar and restaurant located in Minneapolis. Sharpe is the owner of the building in which the Chatterbox Pub is located, and he leases the building to the Chatterbox Pub.

Wong has Ehlers-Danlos syndrome and postural orthostatic tachycardia syndrome, which cause him to experience pain when he moves and to be susceptible to joint dislocations and dizziness. It is very difficult for Wong to engage in normal daily activities like showering and leaving his home; his ability to safely move is very restricted, and he tires quickly. Wong uses a wheelchair and requires a driver when leaving his home. He has sued other businesses for alleged ADA violations.

**November 20, 2013 Visit to the Chatterbox Pub**

On November 20, 2013, Wong went to the Chatterbox Pub. He was driven there by Peter Hansmeier and Angela Van Den Hemel, who are both employed by Wong's attorney.

Wong testified that he went to the Chatterbox Pub that day "to see if [he could] get in and have a beer." When they arrived at the Chatterbox Pub, Wong observed from the car that the main entrance had a six-inch step and did not have a sign indicating that there was another public entrance accessible to handicapped persons. The group drove to the other side of the building, where Wong, again from the vantage point of the car, saw an outdoor patio and a patio entrance that had "about a two or so inch step or a threshold." Both Hansmeier and Van Den Hemel testified that the patio entrance threshold height appeared to be approximately one to two inches, with Van Den Hemel also indicating that it was "about two inches" and "near [two inches]."

The outdoor patio was enclosed by a metal fence. There was a gate at one end of the fence, which was closed. Van Den Hemel testified that "it didn't seem like a public entrance" because there was no sign on the door. Wong testified that the patio entrance had a glass door, and he "could easily see" that "there was like a stack of chairs or barstools . . . up against the glass." Van Den Hemel testified, "You could see some stools . . . kind of blocking the door." Wong did not get out of the car during the trip because it was cold outside and he "could easily see there was no way for [him] to get in." Hansmeier and Van Den Hemel did not get out of the car either.

**Subsequent Visits to the Chatterbox Pub**

Hansmeier and Van Den Hemel returned to the Chatterbox Pub on several occasions in 2014 and early 2015, during which they observed the patio entrance, took photographs, and, on one occasion, measured the patio entrance threshold height. On January 7, 2014, Van Den Hemel went to the Chatterbox Pub during regular business hours and noticed that

the patio gate was open. She went through the gate and tried to open the patio door, but it was locked. Van Den Hemel also went to the Chatterbox Pub on May 9, 2014, and August 6, 2014, and took photographs of the patio entrance and fence area. On September 15, 2014, Hansmeier returned to the Chatterbox Pub and took photographs of the patio entrance from inside the Chatterbox Pub.

On February 9, 2015, Hansmeier and Van Den Hemel took photographs of the patio entrance and measured the patio entrance threshold height. They both testified that the measurements they took ranged between one and a half and two inches. Van Den Hemel testified that during each of her visits to the Chatterbox Pub, there were bar stools blocking the patio entrance doorway from inside the restaurant.

Hansmeier testified that in early April 2015, he visited the Chatterbox Pub and noticed that the patio entrance had been modified, as there was now a metal ramp that extended from the patio door to the sidewalk. The ramp ran the length of the door and extended onto the sidewalk for approximately six inches. Hansmeier testified that, during each of his visits to the Chatterbox Pub, with the sole exception of the April 2015 visit, there was no signage anywhere on the building indicating the presence of an accessible entrance.

On April 12, 2015, the day before trial, Wong was driven to the Chatterbox Pub. Wong testified that the main door now had a sign indicating that the patio entrance is accessible, and the patio door now had a handicapped sticker affixed to it. But, he testified that the patio entrance threshold still looked like it had "two or more inches of elevation."

4

Wong did not try to open the patio door and apparently did not get out of the car during this visit.

**Testimony of the Chatterbox Pub's Corporate Representative**

Steven Miller, who had operated the Chatterbox Pub for 15 years, testified that throughout his years of operation, customers in wheelchairs had accessed the Chatterbox Pub through the patio door. He testified that the patio gate does not have a lock on it. He also testified that he measured the patio entrance threshold height in late spring of 2014 and that it measured "a little less than half an inch" without the black door mat and "definitely less than half an inch" with the mat. Miller testified that during the 2014–15 winter, the sidewalk outside the patio entrance "sank" and broke away from the threshold, due to freezing and thawing. He explained that when Hansmeier and Van Den Hemel took photographs and measured the threshold on February 9, 2015, the sidewalk had already broken away from the threshold.

Miller testified that sometime in February or March 2015, approximately one year after Wong filed the lawsuit, he hired a company to build a ramp at the threshold so that the patio entrance would comply with the ADA. The company built a ramp, but Miller later discovered that the ramp was too steep. The company was unwilling or unable to fix the ramp. Miller then hired someone to "sandjack" the sidewalk, which involves drilling holes in the sidewalk and pumping pressurized sand underneath in order to lift the sidewalk up and "level it." The sandjacking took place April 11, 2015, just two days before trial. Miller testified that a motorized wheelchair user tested out the threshold after it was sandjacked and did not have any problem getting over the threshold. Miller testified that,

5

as a result of the sandjacking, "there's zero gap between the metal on the door and the sidewalk. There's no lip there anymore. It's one hundred percent even with the metal."

Finally, Miller testified about the interior of the patio entrance and discussed the photographs that Hansmeier took in September 2014. He explained that one of the photographs was "a little deceiving" because it made it look like a bar stool was blocking the aisle near the interior of the patio door. He asserted that another photograph showed that the aisle from the patio door was accessible and that bar stools were not blocking the entrance. Miller also testified about a photograph Van Den Hemel took in May 2014 from outside the patio entrance, which shows a bar stool inside the restaurant, stating that the bar stool was "not sitting right in front of the door. That's several feet inside the door."

**District Court Decisions**

The district court filed an order in July 2015, concluding that Wong had standing to sue and that the defendants violated both the ADA and the MHRA. The district court determined that Wong was the prevailing party and ordered the defendants to remediate the patio entrance, having rejected their evidence of remediation. The district court filed another order in December 2015, awarding Wong attorney fees and costs against building owner Sharpe in the amount of $25,972.25.[1] This appeal by Sharpe followed.

---

[1] Attorney fees were not awarded against the Chatterbox Pub because it had filed for bankruptcy.

## DECISION

### I.

Sharpe argues that the district court erred by concluding that Wong had standing to seek injunctive relief, specifically contending that Wong failed to show that he sustained an injury in fact. The district court determined that Wong sustained an injury in fact because he encountered two non-accessible entrances to the Chatterbox Pub on November 20, 2013, and he "desire[d] to return to [the] Chatterbox Pub in the near future once the barriers are remediated."

Whether a party has standing is a question of law, which we review de novo. *See Fed. Home Loan Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 70 (Minn. App. 2015), *review denied* (Minn. June 30, 2015). But, we review the facts underlying a district court's determination of standing for clear error. *See Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002) (stating that, on appeal from a bench trial, "[w]e give the district court's factual findings great deference and do not set them aside unless clearly erroneous"), *review denied* (Minn. June 26, 2002). "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted). We defer to the district court's credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

### A.    ADA Claim

For purposes of his ADA claim, Wong needed to establish the three basic standing requirements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992)) (quotation marks omitted); *see Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (analyzing standing in ADA context). Standing is determined as of the time the lawsuit was commenced. *Steger*, 228 F.3d at 892.

To satisfy the injury in fact requirement, "[t]he plaintiff must show that he or she sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate." *Id.* (alterations in original) (quotation omitted). "Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." *Id.* (citation omitted). "Intent to return to the place of injury 'some day' is insufficient." *Id.* at 893 (quoting *Lujan*, 504 U.S. at 564, 112 S. Ct. at 2138).

The district court found that Wong encountered barriers during his November 20, 2013 visit to the Chatterbox Pub and that he intended to return to the restaurant "in the near future." On this record, these findings are not clearly erroneous. Wong testified that he was unable to enter the Chatterbox Pub because the threshold height at both entrances was

at least two inches and that, as set forth in his affidavit, he planned to "definitely return to the Chatterbox Pub in the future" when "there is a safe and accessible entrance." Wong noted that 75% of his friends patronize the Chatterbox Pub and stated that he hoped to go out for a beer again, as he was trying to go out more often. And, Wong did in fact return to the Chatterbox Pub on April 12, 2015, the day before trial. Because Wong encountered architectural barriers on November 20, 2013, and intended to visit the Chatterbox Pub in the imminent future, the district court did not clearly err by finding that he sustained an injury in fact, and Wong therefore had standing for purposes of his ADA claim. *See id.* at 892–93 (analyzing injury in fact requirement).

### B. MHRA Claim

Standing for purposes of an MHRA claim requires less of a showing than for an ADA claim. *See Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 862 (Minn. 2010) ("[W]hen an individual or company violates a civil rights law, the act of discrimination itself constitutes sufficient injury for the law to provide a remedy, in the absence of statutory language requiring more." (emphasis omitted) (quotation omitted)). Because Wong had standing for purposes of his ADA claim, he also had standing for purposes of his MHRA claim.

### II.

Sharpe argues that the district court erred by concluding that he and the Chatterbox Pub violated the ADA and the MHRA. Whether the defendants violated the ADA or the MHRA is a question of law, which we review de novo. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 214 (Minn. 2014) ("We review

9

questions of law de novo, giving no deference to the district court's conclusions of law."). But, we review the district court's findings of fact for clear error, *Porch*, 642 N.W.2d at 477, and we defer to the district court's credibility determinations, *Vangsness*, 607 N.W.2d at 472.

## A. ADA Claim

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (2012). Discrimination includes the "failure to remove architectural barriers . . . in existing facilities, . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv) (2012). The ADA grants a private right of relief, including injunctive relief, "to any person who is being subjected to discrimination on the basis of disability." 42 U.S.C. §§ 2000a-3(a), 12188(a)(1) (2012).

Congress has given the United States Attorney General the authority to promulgate regulations that implement Title III of the ADA. 42 U.S.C. § 12186(b) (2012). Under this authority, the Department of Justice promulgates the ADA Standards for Accessible Design (ADA Standards). *See* 28 C.F.R. pt. 36, App. D (2015). The ADA Standards "provide valuable guidance for determining whether an existing facility contains architectural barriers." *Pascuiti v. N.Y. Yankees*, 87 F. Supp. 2d 221, 226 (S.D.N.Y. 1999).

In order to prevail on his ADA claim, Wong was required to establish that he has a disability within the meaning of the ADA; that the defendants own, lease, or operate a place

of public accommodation; and that the defendants discriminated against him within the meaning of the ADA. *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). The parties stipulated at trial that Wong has a disability within the meaning of the ADA and that the Chatterbox Pub is a place of public accommodation. It was also undisputed that the defendants owned, leased, or operated the Chatterbox Pub. Thus, the only contested issue on appeal is whether the defendants discriminated against Wong under the ADA.

To demonstrate discrimination, Wong must show that (1) he encountered an architectural barrier; (2) the respondents failed to remove the architectural barrier; and (3) removal was readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A)(iv) (defining discrimination); *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006) (stating that ADA plaintiff has initial burden of production to show that architectural barrier exists and that removal is readily achievable). The district court concluded that Wong satisfied all three requirements and that the defendants discriminated against him within the meaning of the ADA.

### 1. Wong encountered architectural barriers due to his disability.

The district court found that when Wong visited the Chatterbox Pub on November 20, 2013, both the main entrance and the patio entrance had threshold heights that did not comply with the ADA Standards. *See* ADA Standards § 404.2.5 (2010) ("Thresholds, if provided at doorways, shall be ½ inch (13 mm) high maximum."). Specifically, the district court found that the main entrance threshold height was approximately six inches, and the patio entrance threshold height was approximately two inches. The district court also

found that, on November 20, "the patio entrance gate was closed, the patio entrance door was locked, and the doorway was blocked by bar stools." Finally, the district court found that Wong was unable to use the patio entrance due to his disability. Sharpe argues that the district court's finding that Wong encountered architectural barriers on November 20 is clearly erroneous for three reasons.

First, Sharpe argues that it was clear error for the district court to find that the patio door was locked on that date. Van Den Hemel testified that the patio door was locked when she visited the Chatterbox Pub in January 2014, but nobody testified that the patio door was locked on November 20, 2013, as Wong, Hansmeier, and Van Den Hemel stayed in the car during that visit. The district court's finding that the patio door was locked on November 20, 2013, is clearly erroneous.

Second, Sharpe argues that it was clear error for the district court to find that the patio doorway was blocked by bar stools on November 20, 2013. Both Wong and Van Den Hemel testified that, from their vantage point in the car, it looked like bar stools were blocking the patio entrance from inside the Chatterbox Pub. The district court explicitly credited Wong's testimony on this point. Hansmeier added that he could see a barstool "just on the other side of the [patio] door." The district court's finding that bar stools were blocking the patio doorway on November 20, 2013, is not clearly erroneous.

Third, Sharpe argues that it was clear error for the district court to find that the patio entrance threshold height was approximately two inches on November 20, 2013. Sharpe points out supposed inconsistencies in Wong's and Van Den Hemel's testimony in their affidavits and at trial. Wong stated in his affidavit that the threshold height "exceeded ½

12

inch," and he stated at trial that the threshold height was "about . . . two or so inch[es]." These statements are not inconsistent, and they support the district court's finding. Van Den Hemel stated in her affidavit that the threshold height was "at least one inch," and she stated at trial that the threshold height was "one to two inches." These statements are also not inconsistent, and they support the district court's finding. In addition, Hansmeier testified that the threshold height "was about one to two inches." The district court's finding that the patio entrance threshold height on November 20, 2013, was approximately two inches is not clearly erroneous.[2]

Because the evidence supports the district court's findings that bar stools were blocking the patio entrance and that the patio entrance threshold height exceeded one-half inch, we conclude that the district court's finding that Wong encountered architectural barriers on November 20, 2013, due to his disability is not clearly erroneous.

---

[2] Sharpe argues that, even if the patio entrance threshold height failed to comply with the ADA Standards on November 20, this does not automatically mean that there was an architectural barrier in violation of the ADA, relying on *Brown v. County of Nassau*, 736 F. Supp. 2d 602, 616–17 (E.D.N.Y. 2010). But, *Brown* is distinguishable legally, factually, and procedurally from this case. In *Brown*, a disabled individual brought a claim against the county as the owner of a professional sports facility, arguing that the facility was not "readily accessible" for programs or activities by disabled persons under Title II of the ADA. *Id.* at 603–04. In denying the parties' summary judgment motions, the court reasoned that one individual barrier to access, by itself, did not necessarily mean the entire facility and its programs were inaccessible to persons with disabilities within the meaning of Title II as a matter of law. *Id.* at 616–617. Here, Wong brought this action under Title III, which requires that he prove that there was an architectural barrier which defendants failed to remove even though its removal was readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). After a trial on the merits, the district court, using the ADA standards, found that Wong met his burden of proof under Title III.

13

## 2. The defendants failed to remove the architectural barriers.

The district court found that by April 12, 2015, the day before trial, the defendants had not removed, or "remediated," the architectural barriers. Specifically, the district court found that the patio doorway was still blocked by bar stools and that the evidence was insufficient to determine whether the defendants had remediated the patio entrance threshold height. Sharpe does not challenge the district court's finding that bar stools continued to block the patio doorway, and we note that the photographs relied upon by Miller at trial depict bar stools inside the patio door that appear to block the patio entrance.

As to the patio entrance threshold height, there is no dispute that the first attempted remediation, installing a metal ramp outside the patio door, was unsuccessful. And, the district court found that the second attempted remediation, the sandjacking, was unsuccessful because the credible evidence introduced at trial indicated that the threshold height still did not comply with the ADA Standards. Sharpe argues that this finding is clearly erroneous because Miller's testimony, along with "the clear photographic evidence," proved that the second attempted remediation was successful. Miller testified that after the sandjacking was performed, there was "zero gap between the metal on the door and the sidewalk" and that the concrete slab was "flat right up to the door," relying on four photographs depicting the patio doorway area. Although post-remedial photographs depicting the threshold after the sandjacking were received into evidence, the defendants did not introduce any evidence or measurements of the threshold at the time of

14

trial specifically indicating whether the second attempted remediation was in compliance with the ADA Standards.

Although Miller's testimony may have supported the defendants' claim that the threshold was remediated to comply with the ADA standards, the district court, in finding that there was insufficient evidence submitted by the defendants regarding the remediation, explicitly credited Wong's testimony as to the patio entrance threshold height on April 12, 2015, i.e., that it "appeared too high for him to traverse in his wheelchair." This court will not reweigh the district court's credibility determinations. *Vangsness*, 607 N.W.2d at 472.

Sharpe contends that the district court should have relied on an affidavit of the defendants' expert that the defendants submitted with their posttrial brief, which stated that the second attempted remediation complied with the ADA Standards. But, the affidavit was dated May 9, 2015—more than three weeks after the trial. Accordingly, the affidavit was not part of the trial record, and it was proper for the district court not to consider the affidavit. *See Wear v. Buffalo-Red River Watershed Dist.*, 621 N.W.2d 811, 816 (Minn. App. 2001) (stating that arguments raised for first time in posttrial brief are "not adequately raised in the district court"), *review denied* (Minn. May 15, 2001).

We conclude that the district court's finding that, as of April 12, 2015, the defendants failed to remove the architectural barriers, is not clearly erroneous.

### 3. Removal of the architectural barriers was readily achievable.

Sharpe does not appear to challenge the district court's finding that remediation was readily achievable. In any event, on this record, this finding is not clearly erroneous. It is self-evident that removing bar stools from the patio doorway is readily achievable. And,

15

the Department of Justice has indicated that installing an entrance ramp is a "modest measure[]" that is "likely to be readily achievable." 28 C.F.R. pt. 36, App. C (2015).

Because the record supports the district court's findings that Wong encountered architectural barriers, that the defendants failed to remove the architectural barriers, and that removal was readily achievable, the district court did not err by concluding that the defendants violated the ADA.

**B.    MHRA Claim**

The district court concluded that, because Wong's MHRA claim was "co-extensive" with his ADA claim, the defendants also violated the MHRA. *See Fenney v. Dakota, Minn., & E. R.R. Co.*, 327 F.3d 707, 711 n.5 (8th Cir. 2003) (noting that "the MHRA parallels the ADA" and concluding that the district court "properly treated [plaintiff's] MHRA claim as co-extensive with his ADA claims"); *see also Roberts ex. rel Rodenberg-Roberts v. KinderCare Learning Ctrs., Inc.*, 86 F.3d 844, 846 n.2 (8th Cir. 1996) (assuming that analysis of ADA claim applies equally to MHRA claim); *Kolton v. County of Anoka*, 645 N.W.2d 403, 410 (Minn. 2002) (finding federal court ADA interpretations "useful" in resolving MHRA claim where relevant language of ADA and MHRA was "similar"). Wong brought his MHRA claim under Minn. Stat. § 363A.11, subds. 1–2 (2014), and the relevant language of this statute is similar to 42 U.S.C. § 12182(a). Therefore, the district court did not err by concluding that the defendants violated the MHRA.

**III.**

Sharpe argues that the district court erred by designating Wong as the prevailing party for attorney fee purposes. Both the ADA and the MHRA provide that a district court,

16

in its discretion, may award reasonable attorney fees to the prevailing party. 42 U.S.C. § 12205 (2012); Minn. Stat. § 363A.33, subd. 7 (2014). To qualify as a prevailing party under the ADA, "a plaintiff must obtain relief on the merits that directly benefits him or her through an enforceable judgment." *See Pedigo v. P.A.M. Transp., Inc.*, 98 F.3d 396, 397–98 (8th Cir. 1996). This is precisely what Wong obtained: an enforceable judgment on the merits ordering the defendants to remediate the Chatterbox Pub's patio entrance within six weeks of the order and to file an affidavit of compliance. Sharpe has provided no apposite authority supporting his argument that Wong is not a prevailing party for purposes of the ADA or the MHRA. *See Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 910 (8th Cir. 2012) (involving preliminary injunction standard in non-ADA case); *Baer v. J.D. Donovan, Inc.*, 763 N.W.2d 681, 683 (Minn. App. 2009) (noting that MHRA does not provide general definition of "aggrieved party," one requirement of being considered "prevailing party," but MHRA specifically defines "aggrieved party" for purposes of employment application discrimination cases). We conclude that the district court did not err by designating Wong as the prevailing party.

**IV.**

Sharpe argues that, because the defendants "remediated the alleged violations prior to any judicial action, Wong's ADA [and MHRA] claims are moot." As ordered by the district court, Sharpe filed an affidavit of compliance on August 5, 2015, by re-filing his expert's affidavit. Sharpe appears to argue that, because Wong failed to object to the affidavit of compliance, this court should give the affidavit retroactive effect and conclude that the defendants remediated the violation prior to trial. This argument is unpersuasive

17

because the defendants failed to prove *at the time of trial* that the second attempted remediation was successful. Sharpe has not shown that remediation rendered Wong's claims moot.

**V.**

Sharpe argues that the district court abused its discretion by awarding attorney fees to Wong. After prevailing at trial, Wong requested attorney fees and costs in the amount of $77,145. The district court concluded that Wong was entitled to attorney fees and costs, but awarded a reduced amount of $25,862.25 in attorney fees and $110 in costs, for a total award of $25,972.25. Sharpe argues that Wong was not entitled to any attorney fees and that the district court "did not fully consider the requisite factors in its analysis."[3] "[Appellate courts] review an award of attorney fees for an abuse of discretion." *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 534 (Minn. 2013) (quotation omitted).

Minnesota courts generally apply the lodestar method to determine the reasonableness of statutory attorney fees. *Id.* at 535. "The lodestar method requires the [district] court to determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (quotation omitted). In determining "the reasonable value of the legal services," the district court should consider "all relevant circumstances." *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971). The circumstances informing a district court's determination of reasonableness include "the

---

[3] Sharpe also argues that the district court erred by accepting Wong's allegedly untimely fee request, but this argument is waived for lack of citation to authorities. *In re Estate of Rutt*, 824 N.W.2d 641, 648 (Minn. App. 2012), *review denied* (Minn. Jan. 29, 2013).

time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." *Green*, 826 N.W.2d at 536 (quotations omitted).

The district court reduced Wong's requested attorney fees and costs by nearly two-thirds, from $77,145 to $25,972.25. The district court reduced the requested hourly rate of Wong's counsel (from $350 per hour to a range of $200 to $300 per hour), the requested hourly rate of paralegal work (from $220 per hour to $100 per hour), and the total requested hours (from 234.08 to 120.08 hours). The district court indicated that, in determining the award, it considered counsel's legal experience, the difficulty of the work performed, and the reasonableness of the activities undertaken. As an example, the district court stated that it reduced the rate and hours requested for drafting the complaint because the complaint was a form complaint used in over a dozen of Wong's other cases. The district court also took into account "the nature and reasonableness of [the defendants'] opposition in this case." Notably, the district court found that the defendants unreasonably extended the litigation by not making a good faith effort to remediate the patio entrance threshold height "until the eve of trial."

We conclude that the district court properly considered "all relevant circumstances" in making its attorney fee award. *Paulson*, 290 Minn. at 373, 188 N.W.2d at 426. The district court reduced the total award by two-thirds and provided several well-reasoned

19

bases for this significant reduction of the requested award. On this record, the district court did not abuse its discretion by awarding Wong attorney fees.

**Affirmed.**